UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER MELITO,

                       Plaintiff,

-against-

ROYAL BANK OF CANADA et al.,

                       Defendants.

24-CV-5061 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

       Plaintiff Christopher Melito brought this action against Royal Bank of Canada, RBC Capital Markets, LLC, RBC USA Holdco Corporation (together, "RBC Defendants"), Life Insurance Company of North America, New York Life Insurance Company, and The Cigna Group (together, "LINA Defendants," and together with RBC Defendants, "Defendants") in New York Supreme Court. He alleges that Defendants aided, abetted, conspired, and engaged in fraud and misrepresentation with respect to his disability claim. Plaintiff also alleges that the RBC Defendants tortiously interfered with Plaintiff's prospective business relationships with prospective employers. The Court GRANTS both the RBC Defendants' motion to dismiss and the LINA Defendants' motion to dismiss, with respect to the fraud claims, finding that they are preempted by ERISA. The Court declines to exercise supplemental over the remaining state law claim and REMANDS the case to state court.

## BACKGROUND

       The Court details the relevant facts as set forth in Plaintiff's complaint and sets forth the procedural history of the case.

I.     Facts

The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true or the purposes of this motion. S*ee LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff is a former employee of RBC Capital Markets, LLC ("RBC Capital"), where he worked as a research assistant in July 2009. ECF No. 1-1 ("Compl.") ¶ 29. Throughout his employment at RBC Capital, Plaintiff reported to a non-party, Caroline Vincenzi, who was the Business Manager of the Global Research Department. *Id.* ¶¶ 21, 30. Plaintiff's coworkers repeatedly warned Plaintiff about Vincenzi's negative reputation, and many employees feared her. *Id.* ¶¶ 31, 33, 34, 36, 39, 41. Plaintiff, who interacted with Vincenzi daily, alleges that Vincenzi adopted a cutthroat mentality. *Id.* ¶ 36.

Within a few months of his beginning his employment at RBC Capital, Plaintiff began experiencing a myriad of health issues. *Id.* ¶ 43. These health issues required Plaintiff to make frequent trips to the restroom at work, and eventually made it difficult for Plaintiff to perform his essential job functions. *Id.* ¶¶ 43–47. As Plaintiff's condition worsened, he used his accrued paid time off to undergo various medical evaluations. *Id.* ¶ 49. Around this time, Plaintiff alleges that Vincenzi began to monitor Plaintiff more intently, expressing disbelief as to his medical conditions and harassing Plaintiff. *Id.* ¶¶ 50–55. Vincenzi called Plaintiff "bathroom boy" and told his coworkers that they might be required to work extra hours to make up for Plaintiff's absences. *Id.* ¶¶ 56, 59. Plaintiff then went to RBC Capital's human resources ("HR") department for help. *Id.* ¶ 57. He told HR about his medical issues, and was told that any information he disclosed would be confidential. *Id.* ¶ 58. Nonetheless, he alleges that his conversation with HR was divulged to Vincenzi who proceeded to threaten Plaintiff with termination. *Id.* ¶ 59.

Plaintiff claims that his doctor, in September 2010, prescribed "three to six months of bed rest, a restricted diet and trial therapy or other gastroprokinetic agents." *Id.* ¶¶ 60–61. That same month, Plaintiff filed a disability claim for short term benefits (the "Disability Claim") under his employer's disability plan, which was offered by Cigna and administered or insured by the Life Insurance Company of North America. *Id.* ¶ 62. The deadline for physicians to submit documentation in support of the Disability Claim was November 19, 2010. *Id.* ¶ 89. In support of his application, Plaintiff submitted documentation from three different physicians and references related correspondence with Cigna. *Id.* ¶¶ 63–85. Around October 25, 2010, Plaintiff's Disability Claim was denied on the grounds that Plaintiff was not under the ongoing care of a medical doctor who determined that Plaintiff was unable to perform his job duties for more than five workdays due to a qualifying disability. *Id.* ¶ 86. Plaintiff asserts that the Disability Claim was decided by individuals who lacked the requisite credentials and came to the incorrect conclusion. *Id.* ¶¶ 91–103.

In April 2011, Plaintiff appealed the denial of his Disability Claim. *Id.* ¶¶ 104–06. The denial was affirmed around July 13, 2011. *Id.* ¶¶ 107–08. Plaintiff claims that the review neglected to examine and/or mischaracterized relevant documents. *Id.* ¶¶ 109–15. Plaintiff received a letter dated July 29, 2011 informing Plaintiff that his Disability Claim application was denied and reaffirmed on appeal ("First Denial"). *Id.* ¶¶ 116–17. Plaintiff then initiated a second appeal in December 2011. *Id.* ¶ 119. The denial of Plaintiff's Disability Claim was upheld once more on January 24, 2012 ("Second Denial"). *Id.* ¶ 128. Plaintiff raises similar issues with the Second Denial as he does with the First Denial. *Id.* ¶¶ 132–38.

Plaintiff alleges that Defendants' denial of his Disability Claim required him to find a new job. *Id.* ¶ 139. Plaintiff states that he recently discovered that the RBC Defendants interfered

3

with his potential business prospects during his job search between November 2022 and August 2023. *Id.* ¶¶ 143–44. Around eight prospective employers Plaintiff interviewed with abruptly terminated the application process after looking into the circumstances concerning his tenure at and departure from RBC Capital. *Id.* These recent developments prompted Plaintiff's inquiry into the circumstances concerning the denial of his Disability Claim. *Id.* ¶ 147. Plaintiff alleges that the Defendants conspired to wrongfully deny his Disability Claim. *Id.* ¶¶ 148–52. Additionally, sometime after the denial of his Disability Claim, Plaintiff suffered a stroke while on the subway to work. *Id.* ¶ 140.

## II. Procedural History

Plaintiff initiated this action on March 19, 2024, in the Supreme Court of the State of New York, County of New York. *See* Compl. Plaintiff asserts the following claims: fraud and misrepresentation against the RBC Defendants and LINA Defendants, conspiracy to commit fraud against the RBC Defendants and LINA Defendants, aiding and abetting fraud against the RBC Defendants and LINA Defendants, and tortious interference with prospective business advantage against the RBC Defendants. Compl. ¶¶ 159–85.

On July 2, 2024, the RBC Defendants removed the action to the Southern District of New York, United States District Court, and the LINA Defendants consented. ECF No. 1. On August 8, 2024, RBC Defendants moved to dismiss the Complaint, arguing that Plaintiff's claims are preempted by the Employment Retirement Income Security Act ("ERISA") and any claim under ERISA is now time-barred. ECF No. 23 ("RBC Mot."); ECF No. 24 ("RBC Mem."). They also argue Plaintiff cannot assert a claim for tortious interference with a business relationship because it is time barred and Plaintiff lacks standing to assert that claim. *Id.* Later that month, the LINA

Defendants also moved to dismiss Plaintiff's complaint on similar grounds.[1] ECF No. 27 ("LINA Mot."); ECF No. 28 ("LINA Mem.").

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

The Court considers whether Plaintiff's claims are preempted under ERISA, concluding Plaintiff's fraud claims center around the alleged wrongful denial of his ERISA-governed Disability Claim and are therefore preempted. Any ERISA claims by Plaintiff are time-barred.

---

[1] In opposition to Defendants' motions, Plaintiff submits an affidavit. The submission of such affidavits in opposition is improper as "courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018). Accordingly, the Court has not considered Plaintiff's affidavit.

The Court then considers whether to exercise supplemental jurisdiction, finding that the relevant factors weigh in favor of remanding the remaining state law claim to state court.

## I. Plaintiff's Fraud Claims Are Preempted Under ERISA

Defendants contend that Plaintiff's claims are preempted under ERISA because "[a]ll four counts of Plaintiff's Complaint are state law claims that relate to the processing and denial of his short-term disability benefits claim" under RBC's disability plan (the "Plan"). RBC Mem. at 6; *see also* LINA Mem. at 7 ("The First, Second and Third Causes of Action all allege fraud that expressly relates to Plaintiff's claim for Disability Benefits under the Disability Plan and the denial of that claim. . . . His claims therefore expressly 'relate to' the ERISA-governed Disability Plan and are preempted[.]"). Plaintiff asserts that "the Plan was merely context for Plaintiff's garden variety fraud-based claims against the Defendants." ECF Nos. 32 at 9, 34 at 9.

It is well-established that preemption applies to "[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). "ERISA contains a broadly worded preemption clause declaring that the statute 'supersedes any and all State laws' that 'relate to any employee benefit plan.'" *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 106 (2d Cir. 2017) (citing 29 U.S.C. § 1144(a)). "As such, courts in this district have consistently held that state common law fraud claims are preempted by ERISA." *Antell v. United Healthcare Ins. Co. of New York,* No. 10-CV-3194 (RJS), 2012 WL 13042822, at *1 (S.D.N.Y. Mar. 16, 2012) (collecting cases); *see also Tulczynska v. Queens Hosp. Ctr.*, No. 17-CV-01669 (DAB), 2018 WL 1664506, at *4–5 (S.D.N.Y. Mar. 14, 2018) ("Courts in this Circuit have. . . held that claims under New York State law for breach of contract, breach of common law fiduciary duty, fraud, negligence, and misrepresentation are preempted by ERISA."). Courts have also found that "where a state-law

claim such as a fraud claim relies on the 'existence or extent of benefits *under an employee benefit plan*' ERISA preempts the state common law claim." *Antell*, 2012 WL 13042822, at *1 (quoting *DaPonte v. Manfredi Motors, Inc.*, 157 Fed. App'x. 328, 330–31 (2d Cir. 2005)); *see also Rosen v. UBS Fin. Servs. Inc.,* No. 22-CV-03880 (JLR), 2023 WL 6386919, at *5 (S.D.N.Y. Sept. 29, 2023), *appeal withdrawn*, No. 23-7488, 2023 WL 9380374 (2d Cir. Dec. 21, 2023) ("[State law claims] are expressly preempted by ERISA where they are premised on an employee benefit plan, make explicit reference to the plan, and would require reference to the plan in the calculation of any recovery.") (internal citation and quotation marks omitted).

Here, Plaintiff's claims for fraud, conspiracy to commit fraud, and aiding and abetting fraud all center around the alleged wrongful denial of his ERISA-governed Disability Claim. Plaintiff first asserts that "[a]s a result of the Defendants' fraud, misrepresentation and other deceptive conduct" surrounding his Disability Claim, he has "suffered substantial damages." Compl. ¶ 172; *see id.* ¶¶ 159–71. He then asserts that the Defendants "conspired with each other to arbitrarily deny Plaintiff's Disability Claim" and "agreed to participate in the fraudulent scheme because they each benefited financially from denying Plaintiff's Disability Claim." *Id.* ¶¶ 175, 176. Plaintiff also alleges that the "RBC Defendants were aware of and provided substantial assistance to [the LINA Defendants] in advancing fraud against plaintiff." *Id.* ¶ 183. As such, this case is not, as Plaintiff claims, a situation in which a plan covered by ERISA serves as "merely the context for Plaintiff's garden variety fraud-based claims against Defendants." ECF Nos. 32 at 9, 34 at 9. Instead, the fraud claimed here is a scheme by Defendants to deny coverage under the Plan. "[I]t has long been clearly established that allegations of common-law fraud associated with a failure to pay benefits are preempted." *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016); *see also Costa v. Astoria Federal Sav. and Loan Ass'n,* 995 F. Supp.

2d 146, 154 (E.D.N.Y. 2014) (concluding, in action claiming wrongful denial of pension benefits, plaintiff's state law claims are preempted because they seek to enforce her rights under the plan).

The case law Plaintiff relies on is inapposite. Plaintiff primarily cites *Geller v. County Line Auto Sales, Inc.,* for the proposition that a "common law fraud claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans." 86 F.3d 18, 23 (2d Cir. 1996). However, the facts of *Geller* are readily distinguishable. There, a person who was not an employee and therefore was not eligible for insurance, was enrolled in a plan and receiving benefits therefrom. *Id.* at 19–20. The Court found that preemption did not apply in this case because the fraud claims concerned an "unauthorized diminution of pension benefits" and, unlike in the instant case, the fraud claim did "not rely on the pension plan's operation or management." *Id.* at 23.

Similarly, the Court in *Venturino v. First Unum Life Insurance Company* held that ERISA preemption did not apply in an "ordinary consumer protection suit that does not rely upon ERISA as a source of the substantive remedy [Plaintiff] seeks by this litigation." 724 F. Supp. 2d 429, 433 (S.D.N.Y. 2010). Importantly, the Court noted that "its task would not be to . . . adjudicate an entitlement to benefits under an ERISA plan." *Id.* The Court in *Rojas v. Cigna Health & Life Insurance Company*, which found that Plaintiff's fraud claims were based on an independent duty, made the same distinction. No. 14-CV-6368 (KMK), 2018 WL 4759775, at *11 (S.D.N.Y. Sept. 29, 2018) ("[S]tate laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted.") (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003)); *see also*

8

*Stevenson v. Bank of New York Co.*, 609 F.3d 56, 59 (2d Cir. 2010) ("[S]tate laws affecting the determination of eligibility for benefits [] have typically been found to be preempted.") (internal citation omitted); *Cattarin v. Kraft Foods N. Am., Inc. Tip Plan*, No. 09-CV-534A, 2009 WL 3459662, at *2 (W.D.N.Y. Oct. 19, 2009) ("We are persuaded further in this conclusion by the fact that although the defendants improperly administered the plan, the essence of the plaintiffs' fraud claim *does not rely on the pension plan's operation or management*.") (quoting *Geller*, 86 F.3d at 23) (emphasis added). For the foregoing reasons, the Court finds that Plaintiff's fraud claims are preempted by ERISA.

Plaintiff's tortious interference claim, however, is not preempted. Plaintiff alleges that the RBC Defendants interfered with Plaintiff's attempts to secure future employment. Unlike the fraud claims that relate directly to Plaintiff's Disability Claim under the Plan, Plaintiff's tortious interference claims do not relate directly to the Disability Claim. But, for the reasons stated in Section III, the Court declines to exercise supplemental jurisdiction with respect to this claim.

## II. Any ERISA Claims Are Time-Barred

Plaintiff cannot now bring a cause of action under ERISA related to the denial of his Disability Claim because it is time-barred. "In determining whether an ERISA claim is time-barred, "the starting point is the applicable limitations period." *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, 724 F. Supp. 3d 158, 173 (S.D.N.Y. 2024) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009)). Because ERISA "does not prescribe a limitations period for 29 U.S.C. § 1132 actions . . . the applicable limitations period is [the one] specified in the most nearly analogous state limitations statute." *Id.* (internal citation and quotation marks omitted). In the instant case, "New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies as it is most analogous to

§ 1132 actions." *Id.* "[A] cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff." *Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 547 (S.D.N.Y. 2018) (quoting *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999)).

Here, Plaintiff received denials of his Disability Claim and subsequent appeals on October 25, 2010, July 13, 2011, and January 24, 2012. Compl. ¶¶ 86, 107, 128. Each of these clear repudiations occurred more than ten years ago and are clearly outside of the relevant statute of limitations. As such, the Court finds that Plaintiff's fraud claims are time-barred.

Based on the foregoing, the Court GRANTS Defendants' motions to dismiss, finding that Plaintiff's fraud claims are preempted and time-barred by ERISA. Only Plaintiff's tortious interference with prospective business advantage claim against the RBC Defendants remains.

### III. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claim

Having determined that Plaintiff has no federal claims remaining, the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's state law claim against the RBC Defendants. The exercise of supplemental jurisdiction under Section 1367 is within the sound discretion of the district court. However, "[w]hen all federal claims are dismissed, district courts should generally decline to exercise supplemental jurisdiction over pendent state law claims." *Fisk v. Letterman*, 501 F. Supp. 2d 505, 528 (S.D.N.Y. 2007). In making this decision, "courts in this Circuit must weigh considerations of judicial economy, convenience, fairness, and comity." *Wilson v. Dantas*, No. 12-CV-3238 (GBD), 2013 WL 92999, at *9 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014) (internal citation and quotation marks omitted).

Here, "[r]emanding [Plaintiff's] remaining common law claim[] at this early stage of the proceeding—far from trial and before substantial discovery has begun—does not create

substantial unfairness or inconvenience to the parties." *Id.* Additionally, "[c]omity and respect for New York state courts dictate that where possible, state courts should decide matters of state law, and that absent exceptional circumstances, this Court should decline to exercise supplemental jurisdiction over such claims." *Id.* For these reasons, the Court determines that the applicable factors favor remand. Accordingly, the Court declines to exercise supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED with respect to Plaintiffs' fraud claims and those claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim against the RBC Defendants. The Clerk of Court is respectfully directed to terminate ECF Nos. 23 and 27, terminate Defendants Life Insurance Company of North America, New York Life Insurance Company, and The Cigna Group, and REMAND the case to state court.

Dated: March 25, 2025
      New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge